UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BENNY MOLINA,

                     Plaintiffs,                            15 cv 09010 (LAK)

  -against-                                **AMENDED COMPLAINT**

FAUST GOETZ SCHENKER & BLEE, LLP        **JURY TRIAL DEMANDED**
and KIRL C. FRANCIS,

                     Defendants.
------------------------------------------------------------------x

      Plaintiff, by his attorney, Daniel J. Hansen, Esq., as and for an AMENDED COMPLAINT as against the Defendants FAUST GOETZ SCHENKER & BLEE, LLP ('FAUST GOETZ") and KIRL C. FRANCIS (together 'DEFENDANTS"), sets forth and alleges:

## I. INTRODUCTION

      This is a diversity action for damages in relation to plaintiff's claims against DEFENDANTS for negligence/legal malpractice and violation of New York Judiciary Law §487 for a chronic and extreme pattern of legal delinquency related to their representation/defense of plaintiff in two prior New York State court actions—including defendant's default in appearing for the plaintiff herein at 17 trial-ready court dates, ignoring three orders of default, the failure to appear at an inquest, and the faithless abandonment of the plaintiff—all resulting in almost three million dollars in judgments being entered against plaintiff.

## II. PARTIES

1. At all times hereinafter mentioned, defendant FAUST GOETZ, was and now is a foreign limited liability partnership duly organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business in the State of New York at 2 Rector Street, New York, New York.

2. At all times hereinafter mentioned, KIRL FRANCIS was and still is an attorney duly admitted to practice law in the State of New York.

3. At all times hereinafter mentioned, KIRL FRANCIS was an attorney employed by FAUST GOETZ, acting within the scope of his employment of FAUST GOETZ.

### III. JURISDICTION and VENUE

4. Jurisdiction in this case is based upon diversity of citizenship, 28 U.S.C. §1332.

5. Plaintiff is a citizen of the State of Pennsylvania.

6. The partners of FAUST GOETZ are Randy Faust, Marisa Goetz, Robert G. Schenker, David I. Blee, Steven J. Wiederhorn, Vito J. Ferrante, William J. Smith, Lisa Kramer, Thomas M. Kelly, Adam T. Warcholak, Danielle M. Degeorgio, Matthew B. Stein, Lisa De Lindsay, Robert P. Meyerson, and Jeffrey Rubinstein.

7. Neither defendant KIRL FRANCIS nor any of the partners of defendant Faust Goetz is a citizen of the State of Pennsylvania.

8. Randy Faust is a citizen of the State of New Jersey.

9. Marisa Goetz is a citizen of the State of New Jersey.

10. Robert G. Schenker is a citizen of the State of New York.

11. David I. Blee is a citizen of the State of New Jersey.

12. Steven J. Wiederhorn is a citizen of the State of New Jersey.

13. Vito J. Ferrante is a citizen of the State of Connecticut.

14. William J. Smith is a citizen of the State of New York.

15. Lisa Kramer is a citizen of the State of New York.

16. Thomas M. Kelly is a citizen of the State of New Jersey.

17. Adam T. Warcholak is a citizen of the State of New Jersey.

18. Danielle M. Degeorgio is a citizen of the State of New Jersey.

19. Matthew B. Stein is a citizen of the State of New York.

20. Lisa De Lindsay is a citizen of the State of New York.

21. Robert P. Meyerson is a citizen of the State of New York.

22. Jeffrey Rubinstein is a citizen of the State of New York.

23. Defendant KIRL FRANCIS is a citizen of the State of New Jersey.

24. The amount in controversy herein exceeds the sum of $75,000 exclusive of interest and costs.

25. Venue is based on 28 U.S.C. §1391(a) given that a substantial part of the events giving rise to the claims occurred within this Judicial District.

### IV. STATEMENT OF FACTS—THE UNDERLYING ACTION

26. In 2007, actions were commenced in the Supreme Court of the State of New York, New York County, against, among other defendants, BENNY MOLINA, including an action commenced by Gregory Oyen and Julie Oyen filed under Index Number 104883/2007 (the "Underlying Oyen Action") and an action commenced by Allstate Insurance Company a/s/o Gregory Oyen & Julie Oyen, filed under Index Number 108876/2007 (the "Underlying Allstate Action") (together, the "Underlying Actions").

27. The Underlying Oyen Action alleged, among other things, the negligence of BENNY MOLINA in his performance of the construction, renovation, repair, and maintenance work on the roof and exterior of the Premises that allegedly caused water damage by allowing the outside elements to intrude into the property owned by Gregory Oyen and Julie Oyen located at 8 West 65th Street, New York, New York (the "Premises"),

occurring during the period both before and after August 2005, and sought money damages due to the physical damage to the Oyens' apartment.

28. The Underlying Allstate Action alleged, among other things, Allstate Insurance Company had issued to Gregory and Julie Oyen a policy of insurance covering their residence at 8 West 65th Street, New York, New York, that the negligence of Benny Molina in his performance of the construction, renovation, repair, and maintenance work on the roof and exterior of the Premises during the period both before and after August 2005, that caused water damage by allowing the outside elements to intrude into and damage the Premises and that, as a result of the damages to the Oyens' real property, ALLSTATE was obligated to reimburse the Oyens (Allstate's subrogors) under the terms of the policy of insurance in the amount of $370,000.00.

29. On February 26, 2008, the Supreme Court, New York County, issued an Order directing that joint discovery be conducted in actions then pending, including the Underlying Oyen Action and the Underlying Allstate Action.

30. The Underlying Actions were "e-filed" actions pursuant to section 202.5-b of the Uniform Rues for the Supreme and County Courts, with all notices from the Court and all electronic filings made automatically sent to the attorneys for all parities appearing, including DEFENDANTS.

31. DEFENDANTS electronically received, by email or by other method designated by said attorney, copies of all notices from the Court and all electronic filings in the Underlying Actions.

V. ATTORNEY-CLIENT RELATIONSHIP
BETWEEN BENNY MOLINA AND DEFENDANTS

32. After the underlying actions were commenced, DEFENDANTS entered into an attorney-client relationship with BENNY MOLINA.

33. On or about September 12, 2007, DEFENDANTS appeared for and represented BENNY MOLINA in the Underlying Allstate Action, serving an answer.

34. On or about March 14, 2008, DEFENDANTS appeared for and represented BENNY MOLINA in the Underlying Oyen Action, serving an answer on or about March 14, 2008.

35. From March 28, 2008 until July 23, 2015, DEFENDANTS remained the attorneys of record for BENNY MOLINA in the Under Actions, appearing on his behalf at depositions, court conferences, motions, and continued to represent him in all other respects in connection with the Underlying Actions.

## VI. DEFENDANTS' CHRONIC AND EXTREME PATTERN OF LEGAL DELIQUENCY

36. On September 12, 2012, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

37. DEFENDANTS failed to appear on behalf of BENNY MOLINA on September 12, 2012.

38. On December 5, 2012, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

39. DEFENDANTS failed to appear on behalf of BENNY MOLINA on December 5, 2012.

40. On February 13, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

41. DEFENDANTS failed to appear on behalf of BENNY MOLINA on February 13, 2013.

42. On March 7, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

43. DEFENDANTS failed to appear on behalf of BENNY MOLINA on March 7, 2013.

44. On April 11, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

45. DEFENDANTS failed to appear on behalf of BENNY MOLINA on April 11, 2013.

46. On May 30, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

47. DEFENDANTS failed to appear on behalf of BENNY MOLINA on May 30, 2013.

48. On September 12, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

49. DEFENDANTS failed to appear on behalf of BENNY MOLINA on September 12, 2013.

50. On September 30, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

51. On October 28, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

52. DEFENDANTS failed to appear on behalf of BENNY MOLINA on October 28, 2013.

53. On October 31, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

54. DEFENDANTS failed to appear on behalf of BENNY MOLINA on October 31, 2013.

55. On November 6, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

56. DEFENDANTS failed to appear on behalf of BENNY MOLINA on November 6, 2013.

57. Also at or about the time of the November 6, 2013 court conference, the Oyens and Allstate settled, in part, the Underlying Actions as against another defendant in the

Underlying Actions, the owner of the common elements of the property, 8 West 65th Street Condominium, with the insurer for that then defendant paying $100,000 to Allstate and $700,000 to the Oyens. The Underlying Actions against BENNY MOLINA were continued.

58. On November 26, 2013, the Underlying Action was scheduled for trial in "Trial Ready Part" (IAS Part 40) of the Supreme Court, New York County.

59. DEFENDANTS failed to appear on behalf of BENNY MOLINA on November 26, 2013.

60. On November 26, 2013 the Supreme Court, New York County, issued an Order that stated: "Defendant BENNY MOLINA failed to appear for the trial of this matter, scheduled for November 6, 2013. Trial support is hereby directed to schedule this matter to the appropriate judge for an inquest."

61. On November 26, 2013, DEFENDANTS received, by the Court's e-filing system, of copy of the Order dated November 26, 2013.

62. On January 10, 2014, a second Order was issued, stating: "Defendant BENNY MOLINA failed to appear for the trial of this matter, scheduled for November 6, 2013. Trial support is hereby directed to schedule this matter to the appropriate judge for an inquest."

63. On January 10, 2014, DEFENDANTS received, by the Court's e-filing system, a copy of the Order dated January 10, 2014.

64. On January 28, 2014, a third Order was issued against BENNY MOLINA, directing: "ORDERED that the Clerk of the Trial Support Office is directed to restore the case to the appropriate court calendar for an inquest against defendant BENNY MOLINA."

65. On January 28, 2014, DEFENDANTS received, by the Court's e-filing system, a copy of the Order dated January 28, 2014.

66. On April 29, 2014, an inquest was held in the Underlying Actions before the Hon. Martin Schoenfeld of the Supreme Court, New York County.

67. DEFENDANTS received, by the Court's e-filing system, notice of the said inquest.

68. DEFENDANTS received, by First Class Mail, notice of the said inquest.

69. DEFENDANTS failed to appear for BENNY MOLINA at the inquest.

70. The Hon. Martin Schoenfeld, after due deliberation and consideration of the evidence and proof, rendered a decision and verdict on April 29, 2014 awarding damages in favor of the plaintiffs Gregory Oyen and Julie Oyen, ruling that the said plaintiffs were entitled to recover damages in the principal amount of $1,024,447, plus statutory interest on the amount of $1,724,447 from March 1, 2005 until February 19, 2014, and statutory interest on the amount of $1,024,447, commencing from February 19, 2014.

71. The Hon. Martin Schoenfeld, after due deliberation and consideration of the evidence and proof, rendered a decision and verdict on April 29, 2014 awarding damages in favor of the plaintiff Allstate Insurance Company, ruling that the said plaintiff was entitled to recover damages in the principal amount of $262,592.

72. The Court's on-the-record decision at the inquest took into consideration the earlier settlements, including the $700,000 settlement between the Oyens and the insurer for 8 West 65th Street and the $100,000 settlement between Allstate and the insurer for 8 West 65th Street, reducing the respective interest awarded and principal judgment amounts awarded to the Oyens and Allstate.

73. On May 7, 2014, the transcript from the inquest held on April 29, 2014 was filed with the New York County Clerk.

74. Thereafter, the Court "so-ordered" the transcript of the inquest, and the transcript was electronically filed with the Supreme Court Clerk on May 29, 2014.

75. On May 29, 2014, DEFENDANTS received, by the Court's e-filing system, the "so-ordered" transcript of the Inquest.

76. On June 4, 2014, following the rendition of said verdict, judgment was entered in the Underlying Action favor of the GREGORY OYEN and JULIE OYEN and against Benny Molina in the total sum of $2,444,118.17 (the "Oyen Judgment").

77. On June 4, 2014, the Oyen Judgment was electronically filed with the Supreme Court Clerk.

78. On June 4, 2014, DEFENDANTS received, by the Court's e-filing system, the Judgment in the Underlying Oyen Action.

79. On June 4, 2014, a copy of the Oyen Judgment, with notice of entry thereof, was served upon DEFENDANTS by First Class Mail.

80. On August 27, 2014, following the rendition of said verdict, Judgment was entered in the Underlying Action in favor of the Allstate Insurance Company and against Benny Molina in the total sum of $477,269.22 (the "Allstate Judgment").

81. On August 27, 2014, Allstate Judgment was electronically filed with the Supreme Court Clerk.

82. On August 27, 2014, DEFENDANTS received, by the Court's e-filing system, the Allstate Judgment.

83. On August 27, 2014, a copy of the Allstate Judgment, with notice of entry thereof, was served upon DEFENDANTS by First Class Mail.

### VII. DEFENDANTS CONCEALED FROM BENNY MOLINA THEIR CHRONIC AND EXTREME PATTERN OF LEGAL DELIQUENCY

84. From its initial default in appearing for the trial court conference on September 20, 2011 thorough its defaults in appearing in the conferences until November 6, 2013,

DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that THEY had defaulted in appearing at 17 trial-ready conferences.

85. From November 6, 2013 through December 31, 2014, DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that the Court issued the Order of default dated November 26, 2103.

86. From January 10, 2014 through December 31, 2014, DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that the Court issued the Order of default dated January 10, 2014.

87. From January 28, 2014 through December 31, 2014, DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that the Court issued the Order of default dated January 28, 2014.

88. Before the inquest held on April 29, 2014, DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that the Court had scheduled the inquest.

89. From April 29, 2014 through December 31, 2014, DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that the Court had held an inquest on April 29, 2014.

90. From June 4, 2014 through December 31, 2014, DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that the Court had entered the Oyen Judgment.

91. From August 27, 2014 through December 31, 2014, DEFENDANTS concealed from and/or failed to advise plaintiff BENNY MOLINA that the Court had entered the Oyen Judgment.

   VIII. DEFENDANTS FAILED MOTION TO VACATE ITS DAFAULTS

92. On February 5, 2015, FAUST GOETZ filed a motion, by order to show cause, to vacate its multiple defaults.

93. By Order dated April 22, 2015, the Supreme Court, New York County, denied FAUST GOETZ's motion to vacate the multiple defaults. A copy of the Court's decision dated April 22, 2015 is annexed hereto as Exhibit 1.

> VIII. DEFENDANTS CONTINUED THEIR PATTERN OF CHRONIC AND EXTREME PATTERN OF LEGAL DELIQUENCY CAUSED DAMAGES TO BENNY MOLINA

94. Section 5015(a)(1) of the New York Civil Practice Law and Rules required an attorney for a party, including DEFENDANTS as attorneys for BENNY MOLINA, to make a motion to vacate a default within one year of the entry of the default.

95. DEFENDANTS neglected and failed to move to vacate the order of default dated November 26, 2013, within one year from the date of the entry of said order.

96. DEFENDANTS neglected and failed to move to vacate the order of default dated January 10, 2014, within one year from the date of the entry of said order.

97. In the answers to the complaints in the Underlying Actions, DEFENDANTS asserted a number of affirmative defenses, including the first affirmative defense of "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver…"

98. DEFENDANTS, by repeatedly defaulting as set forth above, caused BENNY MOLINA to forfeit and waive the foregoing affirmative first defense, causing him damages in the amounts of the judgments entered in the Underlying Actions.

99. In the Underlying Actions DEFENDANTS asserted a third affirmative defense of "culpable conduct of the plaintiff(s), including contributory negligence, assumption of risks, breach of contract and not by the culpable conduct or negligence of this answering defendant. But if a verdict of judgment is awarded to the plaintiff(s), then and in that event the damages shall be reduced in the proportion which the culpable conduct attributable to the plaintiff(s) bears to the culpable conduct which caused the damages…"

100. DEFENDANTS, by repeatedly defaulting as set forth above, caused BENNY MOLINA to forfeit and waive the foregoing affirmative third defense, causing him damages in the amounts of the judgments entered in the Underlying Actions.

101. In the Underlying Actions, DEFENDANTS asserted a fifth affirmative defense of "injuries and/or damages sustained by the plaintiff at the time and place alleged in the complaint, were due to the acts of parties over whom the defendant was not obligated to exercise any control or supervision…"

102. Defendants, by repeatedly defaulting as set forth above, caused BENNY MOLINA to forfeit and waive the foregoing affirmative fifth defense, causing him damages in the amounts of the judgments entered in the Underlying Actions.

103. In the Underlying Actions, DEFENDANTS asserted a sixth affirmative defense of: "Plaintiff failed to mitigate damages."

104. DEFENDANTS, by repeatedly defaulting as set forth above, caused BENNY MOLINA to forfeit and waive the foregoing affirmative sixth defense, causing him damages in the amounts of the judgments entered in the Underlying Actions.

105.	In the Underlying Actions, DEFENDANTS asserted a sixth affirmative defense of: "Plaintiffs claims are barred to the extent that they destroyed evidence necessary for the fair defense of the claims asserted."

106.	DEFENDANTS, by repeatedly defaulting as set forth above, caused BENNY MOLINA to forfeit and waive the foregoing affirmative sixth defense, causing him damages in the amounts of the judgments entered in the Underlying Actions.

107.	In the Underlying Actions, DEFENDANTS neglected and failed to include as a defense in its answer the defense of the right of set-off pursuant to General Obligations Law §15-108, which "reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest."

108.	At the time that the Underlying Actions were commenced, DEFENDANTS knew that there were defendants other than BENNY MOLINA.

109.	After the claims in the Underlying Actions were settled as against the defendant 8 West 65th Street Condominium Corp., DEFENDANTS never made a motion or otherwise sought to amend the answer on behalf of BENNY MOLINA to include the affirmative defense of the right of set-off pursuant to General Obligations Law §15-108.

110.	Prior to any trial or inquest in the Underlying Actions, defendant DEFENDANTS, on behalf of plaintiff BENNY MOLINA, had the right to retain expert witnesses to contest the claims in the Underlying Actions, including witnesses to contest the issue of liability and the amount and extent of damages.

111.    Defendant DEFENDANTS, on behalf of plaintiff BENNY MOLINA, failed and neglected to retain expert witnesses to contest the claims in the Underlying Actions, including witnesses to contest the issue of liability and the amount and extent of damages.

112.    DEFENDANTS, by repeatedly defaulting as set forth above, and then by failing to move to amend the answer, caused BENNY MOLINA to forfeit and waive the affirmative defense of the right of set-off pursuant to General Obligations Law §15-108.

113.    Prior to any trial or inquest in the Underlying Actions, DEFENDANTS, on behalf of plaintiff BENNY MOLINA, had the right to conduct an inspection of the Premises in order to contest the claims in the Underlying Actions, including obtaining proof to contest the issue of liability and the amount and extent of damages.

114.    DEFENDANTS failed and neglected to conduct an inspection of the Premises to contest the claims in the Underlying Actions, including witnesses to contest the issue of liability and the amount and extent of damages.

115.    FAUST GOETZ, by repeatedly defaulting and its continued neglect as set forth above, caused BENNY MOLINA damages by not obtaining proof by the inspection of the Premises in order to contest the issue of liability and the amount and extent of damages.

116.    At trial or inquest in the Underlying Actions, DEFENDANTS, on behalf of plaintiff BENNY MOLINA, had the right to prove an alternative lesser measure of damages to the Premises, including the cost of repair of the Premises.

117.    DEFENDANTS, on behalf of plaintiff BENNY MOLINA, failed to submit any evidence, expert or otherwise, to establish an alternative lesser measure of damages to the Premises, including the cost of repair of the Premises.

118. DEFENDANTS, by repeatedly defaulting and its continued neglect as set forth above, caused BENNY MOLINA damages by not establishing an alternative lesser measure of damages to the Premises, including the cost of repair of the Premises.

119. At trial or inquest in the Underlying Actions, DEFENDANTS, on behalf of plaintiff BENNY MOLINA, had the right to prove a lesser amount of damages to the Premises, including a lesser amount of the diminution of the value of the Premises.

120. DEFENDANTS, on behalf of plaintiff BENNY MOLINA, failed to submit any evidence, expert or otherwise, to establish a lesser amount of the diminution of the value of the Premises.

121. DEFENDANTS, by repeatedly defaulting and its continued neglect as set forth above, caused BENNY MOLINA damages by not establishing an alternative lesser measure of damages to the Premises, including a lesser amount of the diminution of the value of the Premises.

122. DEFENDANTS shall be answerable in damages as to the full amount of any judgment without regard to the apportionment of liability, as this matter falls under one or more of the exceptions as contained in Section 1602 of Article 16 of the Civil Practice Laws and Rules.

### IX. AS AND FOR A FIRST CAUSE OF ACTION
### (NEGLIGENCE/LEGAL MALPRACTICE)

123. Plaintiff incorporates by reference paragraphs 1 through 124.

124. DEFENDANTS entered into an attorney-client relationship with BENNY MOLINA for the purpose of defending and otherwise representing BENNY MOLINA in the Underlying Actions.

125. DEFENDANTS failed to exercise proper care in its representation of BENNY MOLINA.

126. During the pendency of the Underlying Actions, DEFENDANTS, in violation of its duty to plaintiff BENNY MOLINA, defaulted in seventeen trial-ready court appearances resulting in three orders of default establishing liability against BENNY MOLINA, ignored three separate orders of default, failed to appear at the inquest to contest damages, failed to appeal the Oyen Judgment, failed to appeal the Allstate Judgment, failed to retain or consult any expert witnesses to contest the issue of liability or damages, failed to submit proof of the alternative measure of damages such as the cost of repair of the Premises, and failed to submit alternative proof of the lesser diminution of the value of the Premises.

127. But for the above alleged acts and omissions of DEFENDANTS, plaintiff BENNY MOLINA would not have been found liable to the plaintiffs in the Underlying Actions.

128. But for the above alleged acts and omissions of DEFENDANTS, plaintiff BENNY MOLINA's liability to the to the plaintiffs in the Underlying Actions would have been reduced by the proportionate share of liability borne by the plaintiff's in the Underlying Action.

129. But for the above alleged acts and omissions of DEFENDANTS, plaintiff BENNY MOLINA's liability to the to the plaintiffs in the Underlying Oyen Action would have been reduced by the OYENS' failure to mitigate their damages.

130. But for the above alleged acts and omissions of DEFENDANTS, plaintiff BENNY MOLINA's liability to the to the plaintiffs in the Underlying Actions would have been reduced by the culpable conduct of others in the Underlying Action.

131. But for the above alleged acts and omissions of DEFENDANTS, plaintiff BENNY MOLINA's liability to the to the plaintiffs in the Underlying Actions would have been reduced by the culpable conduct of others in the Underlying Action.

132. But for the above alleged acts and omissions of DEFENDANTS in failing to retain any experts to dispute liability, plaintiff BENNY MOLINA would not have been liable to the plaintiffs in the Underlying Actions.

133. But for the above alleged acts and omissions of DEFENDANTS in failing to retain any experts to dispute the loss of market value calculations made by the plaintiffs in the Underlying Oyen Action, the judgment against BENNY MOLINA would have been greatly reduced or reduced to zero.

134. But for the above alleged acts and omissions of DEFENDANTS in failing to offer an alternative measure of damages of the cost to repair the Premises, the judgment against BENNY MOLINA would have been greatly reduced or reduced to zero.

135. But for the neglect and omissions of DEFENDANTS, plaintiff BENNY MOLINA's liability to the plaintiffs in the Underlying Actions would have been reduced by the right of set-off pursuant to General Obligations Law §15-108 which would have reduced his liability to the greater of the the extent of any amount stipulated by the releases given to the defendant in the Underlying Action 8 West 65th Street Condominium Corp. or in the amount of the said released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

136. The conduct of DEFENDANTS was willful, wanton, reckless and evinced a callous disregard for the rights of plaintiff BENNY MOLINA so as to warrant punitive damages.

137. As a result of the foregoing, plaintiff BENNY MOLINA has suffered damages in the amount of the Oyen Judgment ($2,444,118.17) and the Allstate Judgment ($477,269.22), plus interest at the statutory rate of 9% from the date of entry of said judgments.

### X. AS AND FOR A SECOND CAUSE OF ACTION
### (VIOLATION OF JUDICIARY LAW §487)

138. Plaintiff incorporates by reference paragraphs 1 through 139.

139. DEFENDANTS engaged in a chronic and extreme pattern of legal delinquency related to their representation of BENNY MOLINA in the Underlying Actions, including its failure to retain experts, failure to properly take discovery, failure to include relevant affirmative defenses in the answers served on behalf of BENNY MOLINA, failure to appear at seventeen trial-ready dates from September 12, 2012 to November 6, 2013, failure to timely respond to three separate orders of default issued against BENNY MOLINA, failed to appear at the inquest, failure to appeal or in any way respond to multi-million dollar judgments entered in the Underlying Actions, failure to take steps to prevent efforts to prevent the enforcement of the judgments, failure to timely move to vacate the judgments, and by otherwise faithlessly abandoning BENNY MOLINA in connection with the Underlying Actions.

140. DEFENDANTS, in connection with its representation of BENNY MOLINIA in the Underlying Action, engaged in a pattern of deceit in connection with the then pending action by concealing from BENNY MOLINA that DEFENDANTS had defaulted in appearing at 17 trial-ready conferences from September 20, 2011 thorough November 6, 2013; that the Court had issued three orders of default; that an inquest was held and that DEFENDANTS defaulted in appearing at the inquest; that the Court entered the Oyen Judgment in the amount of $2,444,118.17 and the Allstate Judgment in the amount of

$477,269.22, and that DEFENDANTS failed and neglected to timely vacate the orders of default.

141. But for the chronic and extreme pattern of legal delinquency and the deceit of DEFENDANTS, the judgment against BENNY MOLINA would have been greatly reduced or reduced to zero.

142. By reasons of the foregoing, DEFENDANTS forfeits to BENNY MOLINA treble damages in the amount of $7,332,354.51 in damages related to the Oyen Judgment, plus $1,431,807.66 in damages relating to the Allstate Judgment, for the total principal amount of statutory damages in the amount of $8,764,162.17, plus interest at the statutory rate of 9% from the date of entry of said judgments.

## DEMAND FOR JUDGMENT

WHEREFORE, the plaintiff prays that this court:

i. Find that the DEFENDANTS have committed legal malpractice, in violation of the plaintiff's rights;

ii. Award plaintiff damages for the balance of the judgments in the Underlying Actions, including $2,444,118.17 in the Underlying Oyen Action plus $477,269.22 in the Underlying Allstate Action, all still due and owing) plus post-judgment interest from the date of entry of said judgments, plus costs associated with enforcing the judgment;

iii. Award plaintiff punitive damages pursuant to New York Judiciary Law §487 in the amount of $7,332,354.51 in damages related to the Oyen Judgment, plus $1,431,807.66 in damages relating to the Allstate Judgment, for a total in statutory damages in the amount of $8,764,162.17;

    iv.    Award plaintiff's costs and attorney fees as allowed under Federal Rule of Civil Procedure 54; and

    v.    Grant plaintiff such other relief as is just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York  
November 20, 2015

_____  
Daniel J. Hansen, Esq. (DJH: 0211)  
Attorney for Plaintiff BENNY MOLINA  
767 Third Avenue, 24th Floor  
New York, New York 10017  
(212) 697-3701