UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BENNY MOLINA,

                        Plaintiff,

-against-                                            15-cv-9010 (LAK)

FAUST GOETZ SCHENKER & BLEE, LLP,
and KIRL C. FRANCIS,

                        Defendants.
------------------------------------------------------------x

## MEMORANDUM OPINION

Appearances:

> Anthony T. DiPietro
> LAW OFFICE OF ANTHONY T. DIPIETRO, P.C.
> *Attorney for Plaintiff*

> Michael V. DeSantis
> Anthony J. Proscia
> Adam M. Marshall
> KAUFMAN DOLOWICH & VOLUCK, LLP
> *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Benny Molina brought this legal malpractice suit against the lawyers who represented him in two related state court actions that culminated in the entry of substantial default judgments against him. But, due to a series of agreements between Molina and the plaintiff-judgment-creditor in one of the underlying actions, Molina sues here as the *assignee* of the

judgment-creditor. Defendants have moved for summary judgment dismissing the amended complaint on several grounds. They rely chiefly on the equitable doctrine of judicial estoppel. The Court agrees that the doctrine applies and holds that Molina, as the judgment-creditor's assignee, may not take positions here contrary to those his assignor successfully advanced in the state court actions. For that reason, the Court grants defendants' motion for summary judgment in its entirety without addressing their remaining arguments.

*Facts*

The following facts are undisputed.[1]

Between 2002 and 2006, Molina, through various companies under his control, performed renovation and construction work on the Manhattan building in which Gregory and Julie Oyen owned a penthouse apartment. In 2005, the Oyens' apartment suffered extensive water damage. The Oyens and their insurer, Allstate Insurance Company ("Allstate"), filed related state court actions in which they alleged, among other things, that Molina's negligence in repair work on the building's roof had caused the damage.

Molina retained the law firm Faust Goetz Schenker & Blee, LLP ("Faust Goetz") to represent him and the corporate defendants named in underlying actions, with associate Kril Francis handling the day-to-day litigation of the case. In March 2011, Francis filed a motion for summary judgment dismissing the underlying actions, which the court granted as to one of the corporate defendants. The judgment on its face did not apply to Molina in his personal capacity, so he

---

[1] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The application of judicial estoppel in this case involves undisputed facts and therefore presents a purely legal question.

remained a party to the case.  Despite this, Francis and Faust Goetz, through inadvertence (according to Faust Goetz) or deception (according to Molina), stopped appearing on behalf of Molina.  After counsel for Molina failed to appear for seventeen pre-trial conferences from 2011 through late 2013, the underlying actions proceeded to inquest on April 29, 2014.

At the inquest, Gregory Oyen submitted an affidavit in which he repeated the allegations in the complaint pertaining to Molina's negligence.  Oyen stated also that he had suffered damages totaling $1,724,447.49.  Oyen's attorney, Daniel J. Hansen, affirmed the damages calculation in his submission to the court.  The court awarded net damages of $1,024,447 plus interest to the Oyens and $262,592 plus interest to Allstate, which both parties later entered as judgments against Molina.  Faust Goetz's attempts to have the judgments vacated proved unsuccessful.

Molina and the Oyens then entered into an agreement (the "First Assignment") in which Molina assigned to Gregory Oyen "all rights, benefits, causes of action, and claims" he might possess relating to the underlying action involving Oyen, including claims for legal malpractice.[2]  The First Assignment gave Oyen the "exclusive legal power to prosecute" the claims "without the need for further agreement or action" by Molina.[3]  The agreement provided also that Hansen would serve as Oyen's lawyer "[f]or all purposes, including entering into [the First Assignment], as well as the pursuit of the [a]ssigned [c]laims," and that separate counsel would represent Molina and his

---

[2] DI 58-37, at 2.

[3] *Id.* at 3-4.

4

companies.[4]

Shortly after the execution of the First Assignment, Hansen filed an action in this Court on behalf of Molina against Faust Goetz (the "First Malpractice Suit"), asserting claims nearly identical to those in this case. He did so despite the fact that Molina previously had assigned his right to prosecute the claim to Oyen. With that suit pending, Hansen emailed Allstate's counsel a draft of a new assignment agreement between Molina and Oyen and proposed that Oyen and Allstate share in the costs and proceeds associated with the pursuit of the malpractice claims. On November 16, 2015, the parties in the First Malpractice Suit stipulated to its dismissal without prejudice.

Next, Oyen and Molina executed a second agreement (the "Second Assignment") in which Oyen purported to "assign[ ] back to Molina" any interest covered by the First Assignment.[5] Molina agreed to "commence and duly prosecute" the malpractice case against Faust Goetz and to transfer "[a]ny amounts received" in connection with the suit to "the attorney escrow account of the attorneys of Oyen."[6] The Second Assignment provided also that the net proceeds would be distributed, "without any further agreement, notice, or other requirements, as follows: 6% to Molina and 94% to Oyen, with all amounts applied toward the satisfaction of the [j]udgements."[7] Like the

---

[4] *Id.* at 6.

[5] DI 58-41, at 3.

[6] *Id.* at 4.

[7] *Id.* Although the wording of this provision is somewhat ambiguous, plaintiff has stipulated that it entitles Oyen to all of the funds necessary to satisfy the judgments against Molina and 94 percent of any funds above that amount. DI 57 ¶ 112; DI 67 ¶ 112. Consequently, Molina stands to receive 6 percent of only that portion of the award that is above the amount necessary to satisfy the judgments in the underlying actions.

5

First Assignment, the Second Assignment provided that Hansen would serve as Oyen's attorney "[f]or all purposes, including the entering into this [a]greement, as well as the pursuit of the" assigned claims, and that Molina would be represented by separate counsel.[8]

Simultaneous to the Second Assignment, Molina retained Hansen and his firm to "commence and diligently prosecute in good faith" a second malpractice suit for a fee of "thirty-three and one-third (33 1/3) percent of the sum recovered, whether recovered by judgment, settlement or otherwise."[9] Remarkably, the retainer agreement included a grant from Molina to Hansen of "a power of attorney" so that Hansen would have full authority to settle the case for any amount without further approval from Molina.[10] An additional term provided that Hansen could endorse Molina's name "on any checks that may be paid in settlement" and "retain out of said monies . . . the legal fee as computed pursuant to this agreement."[11]

Hansen then filed this suit on behalf of Molina (the "Second Malpractice Suit") on November 17, 2015. The complaint made a common law negligence claim and asserted a violation of New York Judiciary Law Section 487. But even after he began litigating this case, ostensibly on behalf of Molina, Hansen continued to represent Oyen in negotiations with Allstate over the terms on which they would share the costs and proceeds of the malpractice lawsuit. Nor did Hansen's involvement in this case end when attorney Anthony T. DiPietro was substituted as Molina's

---

[8] *Id.* at 5.

[9] DI 58-42, at 2.

[10] *Id.*

[11] *Id.* at 3.

6

counsel. Rather, Hansen prepared the draft reports for Molina's experts and appeared as Oyen's counsel at his non-party deposition.

*Discussion*

New York law governs this diversity action.[12] In line with many jurisdictions and the federal courts, New York follows the doctrine of judicial estoppel, whereby "a party who assumes a certain position in a prior legal proceeding and secures a favorable judgment therein is precluded from assuming a contrary position in another action simply because his or her interests have changed."[13] The equitable doctrine "rests upon the principle that a litigant should not be

---

[12] *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) ("When sitting in diversity jurisdiction and determining New York state law claims, we must apply 'the law of New York as interpreted by the New York Court of Appeals.'") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (per curiam)).

The circuits are divded over whether federal or state law governs the application of judicial estoppel in diversity cases in federal court. *Compare Eastman v. Union Pacific R.R..*, 493 F.3d 1151, 1156 (10th Cir. 2007) (applying federal law); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 602-604 (9th Cir. 1996) (same); *Guinness PLC v. Ward*, 955 F.2d 875, 89 n.20 (4th Cir. 1992) (same), *with Monterey Dev. Corp. v. Lawyer's Title Ins. Co.*, 4 F.3d 605, 608-09 (8th Cir. 1993) (applying state law); *Konstantinidis v. Chen*, 626 F.2d 933, 937-38 (D.C. Cir. 1980) (same).

The Second Circuit does not appear to have weighed in on the question, although at least one judge of this Court has held that it implicitly has done so. *See Vitrano v. State Farm Ins. Co.*, 2009 WL 3365866, at *4 (S.D.N.Y. Oct. 19, 2009) (Koetl, J.) (citing *Stichting v. Schreiber*, 407 F.3d 34, 45-46 (2d Cir. 2005)). Fortunately, while the choice may be meaningful in some cases, "federal and New York principles of . . . judicial estoppel lead here to the same result." *Mahraj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). This Court therefore will follow the lead of the Second Circuit in *Mahraj* and decline to answer a question not necessary to resolving the case. Accordingly, this opinion cites to state law while noting the extent to which New York law incorporates the elements of judicial estoppel as articulated by federal courts in this circuit and the United States Supreme Court.

[13] *Brooke S.B. v. Elizabeth A.C.C.*, 28 N.Y.3d 1, 17 (2016) (internal quotation marks omitted).

7

permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise."[14]  Doing so could be viewed as "playing fast and loose with the courts."[15]

Equitable in nature, the doctrine "cannot be reduced to a precise formula or test,"[16] but its requirements are well catalogued.  The New York Court of Appeals has cited approvingly[17] to the United States Supreme Court's helpful articulation of the factors courts typically consider:

> "First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."[18]

These factors are not "inflexible prerequisites" and do not constitute "an exhaustive formula," as

---

[14] *Enviro. Concern, Inc. v. Larchwood Const. Corp.*, 101 A.D.2d 591, 593, 746 N.Y.S.2d 175, 177 (2d Dep't 1984) (internal quotation marks and alterations omitted) (citing Note, *The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings*, 59 HARV. L. REV. 1132, 1132 (1946)).

[15] *Enviro. Concern*, 101 A.D.2d at 594, 746 N.Y.S.2d at 177 (internal quotation marks omitted).

[16] *Zedner v. United States*, 547 U.S. 498, 504 (2006).

[17] *See Stewart v. Chautauqua Cnty. Bd. of Elections*, 14 N.Y.3d 139, 150 (2010).

[18] *Zedner*, 547 U.S. at 504 (citations and internal quotation marks omitted) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

In this circuit, the doctrine is "further limited to 'situations where the risk of inconsistent results with its impact on judicial integrity is certain.'" *Chevron Corp. v. Salazar*, 807 F. Supp. 2d 189, 194 (S.D.N.Y. 2011) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)).  New York courts have not stated this as an independent requirement, although many cases note the doctrine's purpose of preserving judicial integrity.  *See, e.g.*, *Festinger v. Edrich*, 32 A.D.3d 412, 413, 820 N.Y.S.2d 302, 303 (2d Dep't 2006) (holding that the invocation of the doctrine in that case "also was essential to avoid a fraud upon the court and a mockery of the truth-seeking function").

8

[a]dditional considerations may inform the doctrine's application in specific factual contexts."[19] Ultimately, judicial estoppel is invoked at the court's discretion.[20]

The somewhat convoluted series of assignments in this case present a twist on an otherwise routine application of the doctrine. Molina brought this suit in his own name, ostensibly to redress the financial harm he allegedly has suffered to due to the alleged negligence of his lawyers in the underlying actions. But defendants argue that Gregory Oyen is the "*de facto* plaintiff."[21] That is so, they say, because Molina gave away his right to sue in the First Assignment and derives his role as plaintiff here solely from the Second Assignment. Defendants further maintain that Molina, acting on behalf of Oyen, should be precluded from taking positions in this case inconsistent with those Oyen took in the underlying actions, which they contend Molina must do to prevail on either cause of action in the amended complaint. Not surprisingly, Molina opposes the application of judicial estoppel at each point.

I.  *Undisputed Facts Establish that Molina Stands in Oyen's Shoes for Equitable Purposes.*

New York courts apply judicial estoppel, like any equitable defense, in tune to the identity of the real party in interest.[22] The threshold issue of who is the "true plaintiff" in this case

---

[19] *New Hampshire*, 532 U.S. at 751.

[20] *Id.* at 750.

[21] DI 59, at 12.

[22] *See, e.g.*, *In re N.Y.S. Urban Dev. Corp.*, 63 A.D.3d 1719, 1721, 881 N.Y.S.2d 263, 265 (4th Dep't 2009); *Secured Equities Invs., Inc. v. McFarland*, 300 A.D.2d 1137, 1138, 753 N.Y.S.2d 264, 266 (4th Dep't 2002).

9

for equitable purposes can be resolved by application of black letter state law to undisputed facts.

In New York, causes of action generally are freely assignable.[23] An assignee of a cause of action holds legal title to sue as a "real party in interest" on the claim, "regardless of the use to be made of any proceeds collected."[24] A valid assignment divests the assignor of all interest in (and control over) the suit, rendering the assignee the sole party in interest.[25] On the other hand, "where there has been a partial assignment, such as an assignment for collection, the assignor and assignee each retain an interest in the claim and both are real parties."[26] The distinction between a complete and partial assignment turns on the degree of control the assignor retains over the conduct and proceeds of the assigned suit.[27]

When evaluating an equitable defense to an assigned claim, courts must pay careful attention to the identities of the parties and their past conduct. For "[i]t is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more

---

[23] N.Y. GEN. OBLIG. L. § 13-101. Some exceptions apply, but they are not relevant here.

[24] *Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 28 N.Y.2d 325, 330 (1971); *see Spencer v. Standard Chemicals & Metals Corp.*, 237 N.Y. 479, 480-81 (1924).

[25] *Spencer*, 237 N.Y. at 480; *see also* 6A CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 1545 (2016) ("When all the rights to a claim have been assigned, courts generally have held that the assignor no longer may sue.").

[26] *Robinson v. Kamens*, 664 F. Supp. 118, 119 (S.D.N.Y. 1987) (applying New York law).

[27] *See Cummings v. Morris*, 25 N.Y. 625, 627 (1862).

than his assignor."[28] In New York, this well established rule applies with equal force to a judicial estoppel defense.[29] An assignee therefore will not be heard to make an argument that his assignor would be judicially estopped from making if the assignor had brought the suit him/herself.

Molina contends that he "cannot possibly b[e] the assignee of the claims or the proceeds of the claims, since Molina was the only person with the right to bring an action" in the first instance.[30] In so arguing, Molina ignores the fact that he relinquished any and all claims that he personally possessed against the defendants when he executed the First Assignment. That assignment was complete, granting Oyen the "exclusive legal power to prosecute" the claims and divesting Molina from any further role in the litigation. Hence, Molina ceased to have any interest in the malpractice claims as of the date of that agreement.

The Second Assignment, in contrast, was not complete and did not restore Molina and Oyen to their respective pre-assignment positions. Rather, the Second Assignment *obligated* Molina to bring the claims and to deposit the proceeds in Oyen's attorney's account, to be distributed almost entirely to Oyen.[31] Hansen, who continues to act as Oyen's attorney "in all

---

[28] *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (1975); *see also* N.Y. GEN. OBLIG. L. § 13-105; *Diesel Props S.r.l. v. Greysone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) ("It has always been the law in New York that an assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment . . . .") (internal quotation marks omitted).

[29] *See Secured Equities*, 300 A.D.2d at 1138, 753 N.Y.S.2d at 266 (holding that an assignee of a mortgage was judicial estopped from taking a position regarding the acceleration of the mortgage that was inconsistent with that taken by the assignor in a prior proceeding).

[30] DI 71, at 13.

[31] Defendants would have had a colorable argument that the Second Assignment was invalid under state law or that its terms require the joining of Oyen as a party to this suit. *See, e.g.*, *DiBlasi v. Aetna Life & Cas. Ins. Co.*, 147 A.D.2d 93, 96, 542 N.Y.S.2d 187, 189-90 (2d

respects" under both assignment agreements, has maintained an unusual degree of control over this case, including the power to settle for any amount and to endorse checks in Molina's name. Molina characterizes this as "limited, residual involvement,"[32] but that is not so – Hansen's engagement includes appearing as Molina's attorney at the suit's early stages and helping to prepare expert reports on which Molina relies in opposing this motion. These undisputed facts belie any contention that Molina brought this suit on his own behalf.

To be sure, the Molina listed as plaintiff on the amended complaint is the same person to whom the malpractice claims initially accrued. But that does not change the fact that Molina sues here as Oyen's assignee under the Second Assignment. If, instead of assigning the malpractice claims back to Molina, Oyen had negotiated the Second Assignment with a different assignee and that assignee had agreed to prosecute the suit and give the proceeds to Oyen for a small fee, there would be no question that that assignee would act as Oyen's assignee. It would follow also that this hypothetical alternate assignee would be subject to any equitable defenses the defendants could have raised against Oyen. It is of no consequence that the plaintiff here is Molina and not the hypothetical alternate assignee. The results must be the same in the two cases.

A Massachusetts court reached that conclusion in *Sandman v. McGrath*,[33] a case involving similar facts. There, plaintiff Sandman had been involved in a car accident in which a

---

Dep't 1989) ("Although the partial assignment of the bad faith cause of action to the plaintiff DiBlasi may appear at first glance to be an improper splitting of a cause of action, in fact, there was no split since all parties to the assignment were joint as plaintiffs in the instant action."). For whatever reason, defendants have not raised this issue. In any event, because the Court concludes that Molina stands in Oyen's shoes for equitable purposes, Oyen is in a sense joined as a plaintiff in this action.

[32] DI 71, at 19.

[33] 943 N.E.2d 945, 78 Mass.App.Ct. 800 (2011).

motorcyclist named Hanlon was severely injured.[34] Hanlon sued Sandman and obtained a $17 million judgment against her, following which Sandman assigned her malpractice claims against her attorney to Hanlon.[35] Hanlon then brought a malpractice action against the attorney, but later substituted Sandman as the plaintiff.[36] The trial court determined that Hanlon was the real party in interest and invoked judicial estoppel to dismiss the malpractice claim.[37] In affirming, the appeals court noted that Hanlon's maneuvers appeared designed to avoid a judicial estoppel defense, that [e]ven after the complaint was amended to name Sandman as plaintiff, the same lawyers represented Sandman as had previously represented Hanlon," and that Hanlon was likely to enjoy the benefits of the malpractice suit.[38] *Sandman* demonstrates that judicial estoppel is a flexible equitable doctrine not easily evaded by subterfuge, a lesson that applies equally well to the case at hand, in which Oyen appears to have taken a page out of Hanlon's play book.

This Court holds that Molina acts here as Oyen's assignee and stands in his shoes for equitable purposes.[39] Moreover, because of Oyen's entitlement to any damages awarded and his

---

[34] *Sandman*, 943 N.E.2d at 946, 78 Mass.App.Ct. at 801.

[35] *Id.*

[36] *Sandman*, 943 N.E.2d at 947, 78 Mass.App.Ct. at 801.

[37] *Id.*

[38] *Sandman*, 943 N.E.2d at 948, 78 Mass.App.Ct. at 803.

[39] Because Molina could not have brought any of the claims absent the Second Assignment, he stands in Oyen's shoes for the totality of those claims, not simply the portion of damages Oyen stands to receive under their agreements. The Court's equitable estoppel analysis thus pertains to the whole of the claims in the amended complaint.

Nor is it the case, as plaintiff perfunctorily asserts in a single sentence in his memorandum

continued control over this litigation, he is at least one of the real parties of interest. The Court therefore assesses the claims in the amended complaint as if Oyen had made them himself.

II.   *Defendants Have Established the Elements of Their Judicial Estoppel Defense.*

First, to prevail on either cause of action Molina must establish facts that are directly contrary to those which support the underlying judgments against him. That is so because state law requires plaintiffs to prove causation on both the common law and statutory malpractice claims at issue here – *i.e.*, that the plaintiff would have prevailed in the underlying action "but for" the attorney's conduct.[40] This puts Molina (as Oyen's assignee) in the untenable position of arguing that Oyen never should have obtained any judgment against Molina. Of course, that directly contradicts Oyen's allegations in state court that Molina's negligence caused the water damage to his apartment. This is a recurring problem in cases where legal malpractice claims are assigned to former litigation adversaries, and one that often leads to the application of judicial estoppel.[41]

---

of law, that defendants' judicial estoppel defense does not apply to the "Allstate judgment." DI 71, at 30-31. As an initial matter, this argument is so underdeveloped that the Court deems it waived. In any event, it lacks merit. The claims here concern conduct in both the underlying case brought by Allstate and the one brought by Oyen because the state court consolidated the two related cases. DI 58-14, at 8. When Molina defaulted, the state court conducted a single inquest. And, under the terms of the Second Assignment, Oyen's control over this suit and his entitlement to its proceeds extend to the entirety of the claims in the amended complaint, not just a portion. Thus, any contention – if the single sentence in the memorandum can be read to make it – that the Court must distinguish between portions of the malpractice claims relating to each of the underlying state cases lacks any legal or factual support.

[40]   *See, e.g.*, *Reibman v. Senie*, 302 A.D.2d 290, 290-91, 756 N.Y.S.2d 164, 164-65 (1st Dep't 2003) (stating well-established rule that plaintiff brining a legal malpractice claim must prove proximate cause); *DiPrima v. DiPrima*, 111 A.D.2d 901, 902, 490 N.Y.S.2d 607, 608 (2d Dep't 1985) (stating similar causation requirement under Judiciary Law Section 487).

[41]   *See, e.g., Alcman Servs. Corp. v. Bullock*, 925 F. Supp. 252, 257 (D. N.J. 1996) ("We therefore hold that the doctrine of judicial estoppel bars Alcman from arguing that its $7

A review of the particular issues Molina contests in this suit demonstrates the degree to which he now directly repudiates Oyen's prior positions. Molina asserts before this Court that he did not perform any work on the apartment building in his personal capacity.[42] But Oyen sued and obtained an enforceable judgment against Molina in his personal capacity.[43] In his affidavit before the state court, Oyen stated that "Benny Molina *individually*, and possibly in the name of one or more of his corporations, was hired to perform" work on the apartment building.[44] Next, Molina argues that he would have at least challenged the calculation of damages, had it not been for his attorney's abandonment.[45] Again, Molina may not make this argument because his assignor stated in sworn documents before the state court that the Oyens "sustained damages in the total amount of $1,724,447.49."[46] At each juncture, Molina unavoidably must contradict positions his assignor took in the underlying actions.

The second requirement for judicial estoppel is met because Oyen "succeeded in persuading a court to accept [his] earlier position."[47] Under New York law, the default judgment

---

million default judgment is the product of Bullock's malpractice, where Alcman argued in a previous forum that the judgment was entirely the product of Majek's contractual liability.").

[42] *See, e.g.*, DI 67, at 1.

[43] *See* DI 58-15, at 4-5 (memorandum decision granting partial summary judgment in underlying actions); DI 58-26 (state court judgment).

[44] DI 58-47, at 3 (emphasis added).

[45] DI 67 ¶¶ 47-48.

[46] DI 58-24.

[47] *Zedner*, 547 U.S. at 534.

Oyen obtained has preclusive effect.[48]  The state court accepted and adopted the claims in the Oyen and Hansen affidavits regarding the cause of the damage and its magnitude when it entered judgment against Molina.

The third consideration, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped,"[49] militates for estoppel here.  Oyen is the party that stands to gain most, if not all, of the proceeds of this suit.  In order to for that to occur, his assignee, Molina, must repudiate not just a position or two that Oyen had previously staked out, but *the entire premise* of the underlying actions.  There has been no suggestion that Oyen was mistaken when he made his prior representations to the state court.  What has changed is that Oyen is now a judgment-creditor seeking to collect on that judgment by arguing that he should not have received it in the first place.  "This is the classic posture in which courts invoke judicial estoppel."[50]  The Court concludes it must apply the doctrine here to prevent Oyen from "playing fast and loose with the courts."[51]

In opposing defendants' motion, Molina does not address whether the requirements of judicial estoppel are present nor whether the Court should exercise its discretion to grant summary judgment on that basis.  Molina argues instead that the doctrine cannot apply because New York law does not prohibit the assignment of legal malpractice claims.  But defendants do not

---

[48] *See, e.g.*, *Eagle Ins. Co v. Facey*, 272 A.D.2d 339, 400, 707 N.Y.S.2d 238, 239 (1st Dep't 2000).

[49] *Zedner*, 547 U.S. at 534.

[50] *Otis v. Arbella Mut. Ins. Co.*, 824 N.E.2d 23, 31, 443 Mass. 634, 643 (2005).

[51] *Enviro. Concern*, 101 A.D.2d at 593, 746 N.Y.S.2d at 177.

dispute that. As defendants point out in their reply memorandum, none of the state cases Molina cites involved a judicial estoppel defense.[52] Molina thus altogether fails to respond to defendants' primary argument in support of summary judgment.

Admittedly, there is some tension between permitting (or at least not categorically prohibiting) the assignment of legal malpractice claims and equitable estoppel because, as this case demonstrates, assignment to a former litigation adversity frequently may lead to its application. That fact is one of several justifications courts in other jurisdictions have cited for outlawing the assignment of legal malpractice claims.[53] The Court is not aware of any New York case that addresses this tension, and the parties have provided none.

Other states, however, have managed to thread the needle. Massachusetts, for example, sits squarely alongside New York in permitting the assignment of legal malpractice claims. In *New Hampshire Insurance Co., Inc. v McCann*,[54] the Supreme Judicial Court rejected a bevy of policy arguments against the practice. In a later case before the same court, the party held to be judicially estopped from suing on an assigned malpractice suit relied on *McCann* to make precisely the argument Molina presses here – if the law does not prohibit assignment of malpractice claims

---

[52] Molina misinterprets *Woodson v. Am. Transit Ins. Co.*, 9 Misc.3d 117(A), 808 N.Y.S.2d 921 (N.Y. Sup. Ct. N.Y. Co. Oct. 11, 2005) (unpublished). The court there denied the defendant insurance company's judicial estoppel defense to a bad faith claim. *Id.* Its discussion of judicial estoppel did not apply to the malpractice claim brought against the former attorneys.

[53] *See, e.g.*, *Kim v. O'Sullivan*, 137 P.3d 61,133 Wash. App. 557 (2006); *Gurski v. Rosenblum & Filan, LLC*, 885 A.2d 163, 276 Conn. 257 (2005).

[54] 707 N.E.2d 332, 429 Mass. 202 (1999)

17

to former litigation adversaries, then judicial estoppel cannot apply in such cases.[55] The court rejected that argument and applied the doctrine, holding that "[n]othing in [*McCann*] precludes a judge from determining that, on the specific facts presented, enforcement of that particular assigned malpractice claim would run afoul of the doctrine of judicial estoppel."[56]

The Court understands New York law to rest in a position similar to that of Massachusetts. While legal malpractice claims may be assigned in New York (even to former litigation adversaries), nothing prevents a New York court from applying judicial estoppel to a case where all of its requisite elements are satisfied. The myriad instances of New York courts applying the ancient doctrine to prevent inequitable outcomes make this Court confident that a New York court would do so on the facts of this case.

---

[55] *See Otis*, 824 N.E.2d at 32 & n.8, 443 Mass. at 644-45 & n.8.

[56] *Otis*, 824 N.E.2d at 33, 443 Mass. at 647.

*Conclusion*

The equitable doctrine of judicial estoppel prevents Molina, as the nominal plaintiff in this case, from making the arguments necessary for him to prevail. For that reason, the Court grants defendants' motion for summary judgment, dismissing the amended complaint [DI 7].

SO ORDERED.

Dated: January 31, 2017

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)